# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 22, 2016 Session

## SANDRA ZOE JEANETTE NAYLOR v. WILLIAM LEE NAYLOR

**Appeal from the Chancery Court for Hardin County**
**No. CH-172  James F. Butler, Chancellor**
_____

**No. W2016-00038-COA-R3-CV – Filed July 15, 2016**
_____

In this divorce appeal, Husband raises several issues concerning marital property and alimony. We modify the trial court's alimony award to award Wife $1,644.00 per month pursuant to Tennessee Code Annotated Section 36-5-121(f), but otherwise affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Modified in Part; and Remanded.**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, AND WILLIAM B. ACREE, SP.J. joined.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, William Lee Naylor.

George D. Norton, Jr., Selmer, Tennessee, for the appellee, Sandra Zoe Jeanette Naylor.

## OPINION

### Background

The parties, Plaintiff/Appellee Sandra Zoe Jeanette Naylor ("Wife"), and Defendant/Appellant William Lee Naylor ("Husband"), were married in 1970. Nearly forty-three years later, the parties separated and Wife filed a complaint for divorce on June 3, 2013. Wife's complaint alleged grounds of inappropriate marital conduct and irreconcilable differences. Husband answered the complaint on June 20, 2013, neither admitting nor denying the grounds, averments, and prayers for relief alleged in the complaint. On July 15, 2013, Wife filed a motion requesting temporary support. No order was ever entered

adjudicating Wife's request; however, the record does reflect that Husband continued to support Wife after the parties' separation.

On March 24, 2014, Wife filed a motion to find Husband in civil and criminal contempt for making changes to the parties' credit and pension accounts. Husband denied that his actions were contemptuous by response filed May 16, 2014.

On June 3, 2014, Husband filed a counter-complaint for divorce, admitting the ground of irreconcilable differences and alleging inappropriate marital conduct against Wife. Wife filed an answer to the counter-complaint on June 6, 2014, denying that she was guilty of inappropriate marital conduct. On October 20, 2014, Husband filed an amended answer to the divorce complaint, admitting both grounds alleged by Wife, but alleging that his inappropriate marital conduct was justified by the "ill acts" of Wife.

The trial court held a trial on November 10, 2014. At the beginning of trial, the parties submitted an agreed stipulation concerning the valuation of the parties' marital property. Importantly, the parties did not value Husband's two pensions, a Pactiv Retirement Pension Plan disbursing $1,283.00 per month, and a Packing Corporation of America Pension Plan, disbursing $609.00 per month. The parties' marital property also included Husband's Fidelity Rollover IRA with a balance of $200,593.00, Husband's Fidelity Deferred annuity with a balance of $193,461.00, Wife's Fidelity Traditional IRA with a balance of $22,887.00, and Husband's 401K plan with a value of $4,624.00. The parties agreed that the marital home was valued at $165,000.00 and unencumbered. The parties also owned several timeshares and other real and personal property. The parties also agreed as to the valuation of their marital debts. Although the parties agreed as to the values of all the marital and separate property, including the decision not to assign a specific present value to the pensions, they did not agree as to its proper distribution.

Much of the testimony at trial focused on the grounds for divorce and Wife's alimony request. Wife, who was sixty-three at the time of trial, testified that she did not work outside the home for the last 18 years of the marriage. The parties moved frequently because of Husband's work, which Wife asserted prevented her from receiving training or education for employment. Wife did testify that she worked briefly for a gym during the parties' marriage, but she only worked part-time and Husband insisted that she be available to take vacations when his work permitted. As such, at the time of the divorce, Wife had no income and she testified that she was not likely to be able to provide any financial support for her own maintenance.

Wife continued to live in the marital home in Tennessee throughout the divorce. The home includes nearly nine acres of property and an adjoining lot that must be maintained. Wife testified that she allows the parties' adult son ("Son") to live with her in the marital home. However, Wife testified that Son had lived with the parties during their marriage, dating back to 2007. According to Wife, Son is unemployed, but because of the acreage of

the marital home, he is necessary to helping her maintain it. Consequently, Wife testified that she pays Son $800.00 per month for help with the home's yard and other maintenance. Son then uses these funds to pay his expenses, including his child support obligation and cigarette purchases. Wife testified that other than this expense and perhaps groceries, she does not expend any other funds that are attributable to Son. At one point, Wife testified however, that her cell phone bill included a phone for both herself and her son. Wife submitted an income and expense worksheet detailing expenses of $8,919.00 per month; Wife admitted, however, that some of the expenses were miscalculated.

Wife generally blamed the demise of the marriage on Husband's extramarital affair. Although Wife admitted that both parties had engaged in extramarital affairs earlier in the marriage, Wife testified that they were able to forgive each other and move on together. In 2013, however, Husband informed Wife and their children that he was seeing another woman with whom he wanted to start a life. Wife testified that she was blind-sided by this revelation, as the parties had recently been discussing Husband's anticipated retirement.

Husband testified that he is sixty-four years old and employed as an engineer in Monroeville, Alabama. His current income is $6,216.39 per month, plus a weekly per diem of over $600.00, monthly travel reimbursement, and occasional bonuses. Husband uses the per diem to rent an apartment in Alabama, where he resided part-time during the marriage and full-time after the parties' separation. Husband testified that because he will no longer be a legal resident of Tennessee while working in Alabama after the divorce, he will no longer receive the per diem or travel reimbursements. Husband testified that he was willing to assume all of the marital debt. Husband also submitted his own statement of income and expense showing expenses of $5,883.27 per month, including a $2,000.00 per month debt payment on an approximately $12,000.00 credit card debt and a $300.00 per month payment on the parties' home equity line of credit.

Despite being in generally good health, Husband testified that he hoped to retire at age sixty-five. According to Husband, his desire to retire stemmed from job-related stress and not being as "sharp" on the job as he was in younger years. Husband testified that errors on the job could result in injuries. Husband estimated that he could draw approximately $2,500.00 per month in social security if he retired at 66, but that amount would be slightly less if he retired earlier. Husband testified that Wife would be entitled to draw half of that amount.

Husband denied that he acquiesced in Son's living arrangements. Although Husband testified that Son did live in the marital home for several years while the parties were together, Husband asserted that the fault lay with Wife because Husband was often working out-of-state and had no control over the situation. Husband admitted that Wife often asked Son to obtain employment. Husband testified that maintenance on the marital home and adjoining property required only one day of work per week and that Son did not deserve $800.00 per month for that work, especially given that Wife was sometimes required to hire professional help when problems arose.

Husband partly blamed the parties' living arrangements on the demise of the marriage. Husband also asserted that Wife's affair in 1976 made Husband distrustful of Wife, especially given that he worked out-of-town. Husband testified that Wife's affair "troubled [him] every night" for twenty years. Husband admitted, however, that he initiated a sexual relationship with his former assistant in November 2012, while out-of-town for work. Husband further admitted that the 2012 affair was not his first marital indiscretion.

The trial court issued a letter ruling on December 2, 2014. The trial court entered a final order of absolute divorce on January 29, 2015, incorporating by reference its letter ruling. First, the trial court awarded Wife a divorce upon the ground of inappropriate marital conduct. The trial court also generally accepted the parties' valuation of the marital and separate property.[1] The trial court awarded Wife the marital home and adjoining lot, as well as 100% of Husband's Pactiv and Packing Corporation pensions, including the income therefrom. The trial did not assign a present value to the two pensions awarded to Wife.

The trial court reduced Wife's reasonable expenses to $4,453.00 per month. Because of Wife's age and lack of work experience, the trial court found that the most Wife could make was minimum wage, but that obtaining any job was unlikely. Including the income from the two pensions, the trial court found that Wife's need totaled $2,561.00 per month. In contrast, the trial court set Husband's expenses at $4,572.00 per month, leaving a monthly surplus of $1,644.00. The trial court noted, however, that while Husband would no longer receive a travel reimbursement, it was not certain that he would no longer receive a per diem. The trial court also found that Husband's tax rate would be substantially lower, increasing his net income. The trial court also found that Son living with Wife predated the separation and that he was not providing support to Wife. The trial court therefore declined to apply Tennessee Code Annotated Section, 36-5-121(f)(2)(B), referred to as the "cohabitation statute" by the parties, to reduce Wife's need for alimony and awarded Wife $2,000.00 per month in alimony in futuro. Finally, the trial court dismissed Wife's contempt petition.

Husband filed a motion to alter or amend the trial court's judgment on February 24, 2015. In his motion, Husband raised several issues: (1) a mistake regarding the valuation of the parties' marital home; (2) the trial court's failure to value Husband's pension, resulting in far more marital property being awarded to Wife; and (3) Husband's alimony obligation exceeds his ability to pay. The trial court entered an order on Husband's motion to alter or amend on June 16, 2015, modifying the final divorce decree to accurately reflect the value of the marital home, but denying Husband's other requested relief. Husband thereafter appealed to this Court.

**Issues Presented**

---

[1] The trial court mistakenly valued the parties' marital home at $125,000.00 rather than the $165,000.00 agreed upon by the parties. As discussed below, the trial court eventually corrected this error.

Husband presented five issues for our review, which are taken from his appellate brief and reordered as follows:

1. Whether the trial court erred in failing to value Husband's two pensions, which currently pay a total of $1,892.00 per month before awarding them to Wife, which including these pensions make the overall distribution of the marital estate inequitable and whether these should have been awarded to Husband with any necessary financial support to Wife handled through an award of alimony.

2. Whether the trial court erred in declining to apply properly the cohabitation statute in determining that Son's contribution in helping Wife around the house was worth the $800.00 per month she was paying him or paying on his behalf.

3. Whether the trial court erred in ordering Husband to pay $2,000.00 in alimony in futuro when Husband had only $1,644 per month to make the alimony payments according to the court's own conclusion, when Wife was also ordered to receive $1,892.00 from Husband's pensions and when the award was inconsistent with Wife's need.

4. Whether the trial court erred in disregarding future actions known at this time in determining Wife's need for support and Husband's ability to pay.

5. Whether Husband is entitled to an award of his attorney's fees on appeal.[2]

**Standard of Review**

In this appeal from a bench trial, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's

---

[2] In the body of her appellate brief, Wife seeks an award of attorney's fees incurred in defending this appeal. Wife, however, did not designate this request as an issue on appeal in a statement of the issues section of her appellate brief. We therefore deem the issue waived. *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that husband waived an issue by his failure to designate it as an issue in his statement of the issues); *see also Rigsby v. Rigsby*, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived.") (citing *Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011)); *Culpepper v. Culpepper*, No. E2014-00815-COA-R3-CV, 2015 WL 6735909, at *6 (Tenn. Ct. App. Nov. 4, 2015) (same).

conclusions of law and our review is de novo. **Blair v. Brownson**, 197 S.W.3d 681, 684 (Tenn. 2006) (citing **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000)).

## Discussion

## Property Division

Husband's first issue concerns the valuation and division of the parties' marital property. Specifically, Husband argues that the trial court erred in failing to place a total value on Husband's two pensions, the Pactiv Pension Plan and the Packing Corporation of America Pension Plan ("the pensions" or "the subject pensions"), and then awarding the pensions to Wife. Husband asserts that because these pensions have significant value that was not considered in the overall property division, the resulting division is inequitable, with Wife receiving significantly more property than Husband.

As we have explained:

> Dividing marital property is not a mechanical process but rather is guided by carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) (2005). **Flannary v. Flannary**, 121 S.W.3d 647, 650–51 (Tenn. 2003); **Tate v. Tate**, 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003). As previously noted herein, trial courts have broad discretion in fashioning an equitable division of marital property. **Jolly v. Jolly**, 130 S.W.3d 783, 785 (Tenn. 2004); **Fisher v. Fisher**, 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property, **Wilson v. Moore**, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). It is not this court's role to tweak the manner in which a trial court has divided the marital property. **Morton v. Morton**, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005). Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the evidence preponderates against the trial court's division of the marital property. **Jolly**, 130 S.W.3d at 785–86.

**Farnham v. Farnham**, 323 S.W.3d 129, 140–41 (Tenn. Ct. App. 2009) (footnote omitted). While the trial court's division of marital property is reviewed for an abuse of discretion, the value of marital property involves questions of fact, which are "entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence." **Owens v. Owens**, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007).

Generally, "[i]n order to divide marital property equitably in accordance with Tenn. Code Ann. § 36-4-121(a), the trial court **must** place a value upon the couples' property." *Cooper v. Cooper*, No. 85-305-II, 1986 WL 10691, at *2 (Tenn. Ct. App. Oct. 1, 1986) (emphasis added); *see also* ***Pope v. Pope***, No. M2010-00067-COA-R3-CV, 2010 WL 4272690, at *5 (Tenn. Ct. App. Oct. 28, 2010) ("Once the court has classified the property, the court must place a reasonable value on marital property that is subject to division.") (citing ***Edmisten v. Edmisten***, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003)). In this case, however, at the start of trial, the parties entered a joint stipulation regarding the value of the martial assets, in which Wife essentially agreed to the valuation of assets proposed by Husband. Counsel for Husband specifically stated that the agreement pertained to "the values" of the parties' marital assets. The stipulated exhibit, however, does not set forth any value for the subject pensions, instead referring only to the monthly income that is generated therefrom. Additionally, Husband does not propose any valuation for these pensions in the chart attached to his brief pursuant to Rule 7 of the Rules of the Court of Appeals of Tennessee, nor does he cite the part of the record wherein he presented any evidence regarding the valuation that should have been assigned to these assets. *See generally* Tenn. Ct. of App. R. 7.  Indeed, from our review of the record in this case, no evidence was presented regarding the total value of the subject pensions. Instead, in his brief to this Court, Husband asks us to take judicial notice of facts not presented to the trial court regarding actuarial tables and discount rates and endeavor to calculate the present value of the subject pensions.

The Tennessee Rules of Appellate Procedure clearly states that: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Additionally, our review is appellate only; accordingly, we will generally not review issues that were not first presented to the trial court. *See, e.g.,* ***Farmers Mut. of Tenn. v. Atkins***, No. E2011-01903-COA-R9-CV, 2012 WL 982998, at *4 (Tenn. Ct. App. Mar. 21, 2012) (declining to consider a matter when no initial determination was made by the trial court); ***Shaffer v. Memphis Airport Auth., Serv. Mgmt. Sys., Inc.***, No. W2012-00237-COA-R9-CV, 2013 WL 209309, at *4 (Tenn. Ct. App. Jan. 18, 2013) ("In an interlocutory appeal, as well as in an appeal as of right, the appellate court considers only questions that were actually adjudicated by the trial court."); ***Reid v. Reid***, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012) ("The jurisdiction of this Court is appellate only; we cannot hear proof and decide the merits of the parties' allegations in the first instance."); ***In re Estate of Boykin***, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, we are limited in authority to the adjudication of issues that are presented and decided in the trial courts.").  Here, Husband's own proposed property division did not include a value for the subject pensions. Indeed, Husband chose to enter into a stipulation regarding the values to be assigned to the marital property, which stipulation did not contain any value for the two pensions at issue. Furthermore, Husband put on no proof regarding the present total value of

the pensions during trial.[3] Under these circumstances, we decline to find error where the trial court accepted the parties' stipulation, especially given that no specific evidence was presented on the subject pensions' present values. *See generally* ***Prater v. Louisville & N. R. Co.***, 62 Tenn. App. 318, 329, 462 S.W.2d 514, 518 (1970) ("The general rule is that stipulations are regarded as contracts or agreements, and they can be rescinded only upon grounds justifying the setting aside of such agreements or contracts generally."). As such, we affirm the trial court's finding that the total value of the marital estate was $618,534.00, which does not include any specific present value for the subject pensions, as the parties agreed not to place a present value on these assets.

In the stipulation, however, Husband did not agree as to the equitable division of the parties' martial assets. On appeal, he therefore argues that the trial court erred in awarding Wife the entirety of the subject pensions because the award of the pensions to Wife essentially prevents Husband from retiring in the near future. Here, excluding Husband's pensions, as we must due to the lack of evidence presented to the trial court on its value, the trial court awarded Wife approximately 58% of the marital property, while Husband was awarded 42% of the marital property, based upon the stipulated values agreed to by the parties. It is well-settled that:

> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

***Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Several factors contained in Tennessee Code Annotated Section 36-4-121(c) lead us to conclude that above property division was not inequitable, including the long duration of the marriage, *see* Tenn. Code Ann. § 36-4-121(c)(1); Husband's substantially higher income, earning capacity, and level of training and education, *see* Tenn. Code Ann. § 36-4-121(c)(2),(4); and Wife's lack of separate property, *see* Tenn. Code Ann. § 36-4-121(c)(6). Under these circumstances, awarding Wife somewhat more marital property is not inequitable.

---

[3] Husband first raised an argument regarding the present value of the subject pensions in his motion to alter or amend. "A Rule 59 motion should only be granted 'when controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice' and 'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.'" ***In re Lawton***, 384 S.W.3d 754, 764 (Tenn.Ct.App.2012) (quoting ***In re M.L.D.***, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Nothing in Husband's motion indicated that he was unable to put on proof regarding the present value of the subject pensions during trial. Indeed, the trial court specifically stated in denying Husband's motion that the information Husband seeks to include "was available at trial, but simply was not used[.]" Furthermore, Husband does not raise the denial of his motion to alter or amend as an error on appeal.

Husband argues, however, that allowing Wife to retain the subject pensions and their payments as her own property prevents him from having access to these funds at his retirement. Specifically, Husband argues that:

> The trial court's unconditional transfer of Husband's pension payments to Wife limits the Court's discretion in future to adjust the financial arrangements between the parties upon Husband's hoped-for and anticipated retirement. Husband clearly indicated his wish to retire in the near future, and the trial court explicitly recognized that this may well happen and that the parties' incomes would both be affected. The only indication in the record is that Husband's income at that time would be his social security and whatever he might be able to draw from his IRAs and nominal 401(k) plan. Upon his retirement, Husband would qualify for social security and Wife would be eligible for her spousal entitlement. As the trial court envisaged, Husband could at that time file for a modification of his alimony. Even if he were successful and his alimony were terminated, however, the relief that the court could grant him would be severely limited; there would be no apparent legal basis for the court to require Wife to re-assign any of the pension payments to Husband and no basis for her to pay him alimony. Thus, Husband at best could wind up with little more than his social security benefits, while Wife would be receiving Husband's pension payments of $1,892 per month plus her spousal share of social security.

(Internal citation omitted). Husband also asserts that the property division ordered by trial court is inequitable if the present values of the two pensions awarded to Wife are considered.

Respectfully, we find Husband's argument somewhat disingenuous. Importantly, we note that nowhere in the above argument does Husband mention that he received other retirement accounts in the division of marital property. The accounts awarded to Husband total over $260,000.00. Husband characterizes these assets as retirement accounts, and therefore, they are available for Husband at his retirement. Furthermore, although Husband clearly expressed his desire to retire within a year following trial, nothing in the record indicates that Husband is physically unable to perform his job or that it is likely to be eliminated. Parties to divorces often must adjust to differing economic realities after the demise of the relationship. This tenet holds true regardless of whether we are considering the circumstances of the economically disadvantaged spouse or the spouse who has generally earned more income throughout the marriage. The simple fact that Husband may not be able to retire at the age he anticipated during the parties' marriage does not equate to an abuse of discretion by the trial court in awarding this property to Wife, as the award ensures that she has sufficient income upon which to survive after the demise of the parties' relationship.

Finally, we note that this Court is not permitted to "tweak" a trial court's property division unless the overall division is inequitable. *See Ghorashi-Bajestani v. Bajestani*, No. E2009-01585-COA-R3-CV, 2010 WL 3323743, at *14 (Tenn. Ct. App. Aug. 24, 2010). Because we have concluded that Husband agreed not to place a present value on the two pensions awarded to Wife and failed to present any evidence to the trial court on their present value, we likewise will not consider the Husband's proffered present value for those assets in determining the value of the property awarded to each party. Given that Husband declined to assign a value to the subject pensions when he was seeking to retain them, we cannot conclude that the trial court erred in failing to consider the present value of these assets in making an equitable division of the parties' marital property. Likewise, we decline to engage in the complicated calculations urged by Husband to assign a value to these assets. Excluding these assets from the calculation, we cannot conclude that the trial court's overall division of the marital property valued by the agreement of the parties was inequitable. As such, Husband has failed to show an abuse of discretion that would justify our interference in the trial court's sound judgment.

## Alimony

Husband next raises several issues with regard to the trial court's decision to award Wife $2,000.00 per month in alimony in futuro. The standard of review applicable in alimony cases was thoroughly considered in the Tennessee Supreme Court's Opinion in *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011):

> [T]his Court repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn.2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).
>
> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220

(Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. ***Robertson***, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

***Gonsewski***, 350 S.W.3d at 105−06 (footnote omitted).

Currently, Tennessee law recognizes four types of spousal support: "(1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." ***Gonsewski***, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(d)(1)). The type of alimony awarded in this case, alimony in futuro, is intended to provide long-term support for the recipient until his or her death or remarriage. Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." ***Id.***; *see also* ***Burlew***, 40 S.W.3d at 470–71; ***Riggs v. Riggs***, 250 S.W.3d 453, 456 n.2 (Tenn. Ct. App. 2007). Alimony in futuro is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36-5-121(f)(1).

As our supreme court explained, however:

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." ***Riggs***, 250 S.W.3d at 456 n.2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. ***Robertson***, 76 S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." ***Kinard***, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." ***Id.*** It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." ***Robertson***, 76 S.W.3d at 340.

***Gonsewski***, 350 S.W.3d at 108.

In determining whether alimony is appropriate, the trial court is directed to consider the factors contained in Tennessee Code Annotated Section 36-5-121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." ***Riggs***, 250 S.W.3d at 457; *see also* ***Bratton***, 136 S.W.3d at 605; ***Robertson***, 76 S.W.3d at 342; ***Burlew***, 40 S.W.3d at 470. Additionally, Section 36-5-121(i) "reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." ***Gonsewski***, 350 S.W.3d at 109. As such, Tennessee law has "a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." ***Id.***

Husband first argues that the trial court erred in calculating Wife's need for alimony where it failed to take into account her cohabitation with the parties' adult Son. To support his argument, Husband cites Tennessee Code Annotated Section 36-5-121, which provides in relevant part:

- 12 -

In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(f)(2)(B).

Wife first argues that the above statutory guidelines do not apply to this case because it involves an initial award of alimony, rather than a modification proceeding. Respectfully, we cannot agree. This Court has previously recognized that "while the above statute concerns only modification of an existing support award, 'the public policy expressed in the statute [is] relevant' to an initial alimony award." *Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at \*8 (Tenn. Ct. App. Aug. 17, 2015) (quoting *Berkshire v. Berkshire*, No. E2014-00022-COA-R3-CV, 2014 WL 6735385, at \*5 n.3 (Tenn. Ct. App. Dec. 1, 2014)). As such, we can consider whether Son's cohabitation with Wife is evidence that her need for alimony is lessened.

Here, the trial court made a specific finding regarding Son's cohabitation with Wife. According to the trial court:

> The Court has heard the testimony concerning [Son] residing in the household of Wife. The Court further finds that this situation existed prior to the Husband's separation from the marital home, and that while it still exists today, does not represent any change in the situation from prior to the separation, and that Mr. Naylor is not providing support to Wife to the extent that she does not need alimony, and that Wife is not providing support to [Son] in excess of the value of the services he performs for her maintaining the grounds and the house where Wife is forced to reside until she can liquidate the house and obtain a smaller and less expensive place to live. Therefore, the Court finds that under all of these circumstances, that the cohabitation statute,

- 13 -

> Tennessee Code Annotated §36-5-121(f)(2)(B), is not impacting
> Husband's duty to support his Wife by a payment of alimony.

The record does not preponderate against the trial court's finding that the situation concerning Son's residence pre-dated the parties' separation, and in fact, has occurred for nearly the last decade.

In a similar case, this Court recently affirmed the trial court's award of alimony to wife, despite the fact that her adult son resided with her. *See **Ezekiel***, 2015 WL 4916930, at *8. The Court of Appeals based its decision on two considerations: (1) testimony was undisputed that the son was not contributing to the household expenses because of his unemployment; and (2) the trial court excluded certain purported expenses of wife that were likely attributable from the adult son. ***Id.*** Likewise in this case, the testimony is undisputed that Son is unemployed and does not contribute financially to the household. Furthermore, the trial court specifically excluded some expenses that it found were attributable to Son in determining that Wife's expenses were $4,453.00, rather than nearly $9,000.00 in expenses that Wife alleged. Under these circumstances, we cannot conclude that the trial court abused its discretion in considering Wife's need for alimony despite the fact that her adult son resides in her home.

Husband next asserts that the trial court erred in awarding alimony in futuro to Wife because the factors in Tennessee Code Annotated Section 36-5-121(i) do not support an award of "permanent" alimony. First, we disagree with Husband's characterization of Wife's alimony as permanent and therefore immutable. While it is true that alimony in futuro typically extends until the death or remarriage of the recipient, Tennessee Code Annotated Section 36-5-121 makes clear that such an award remains in the court's control and may be modified upon a showing of substantial and material changed circumstances. As such, if Wife's need or Husband's ability to pay ever changes, either party may return to the trial court in an effort to modify or terminate the alimony award.

With regard to whether the statutory factors favor an award of alimony in futuro to Wife in this case, the trial court made the following detailed findings:

> a. Wife is almost totally economically disadvantaged relative to Husband. Her earning capacity is at best, a minimum wage type job, which will be difficult to obtain at her age and skill level. Wife needs the financial resources available only to the Husband including income from pensions and retirement plans;[4]
>
> b. Husband's educational level is higher than Wife's and Wife has never used her education since she has been mainly a stay at home spouse and has moved around at different locations to

---

[4] *See* Tenn. Code Ann. §36-5-121(i)(1) (concerning the relative earning capacities of the parties).

facilitate the Husband's employment and to further his employment opportunities and skill level;[5]

c. The parties have been married 44 years;[6]

d. Wife is 63 years of age and Husband is 64, but in good health and fully employed;[7]

e. While Wife will be awarded certain assets of the marital property as set forth on the attached spreadsheet, it is not likely that Wife will be able to accumulate further assets during her lifetime other than those awarded;[8]

f. Wife has devoted her time in the marriage to maintaining a household for the Husband to return to after work, and has cared for the children during their minority almost exclusively and made significant contributions as a homemaker[;][9]

g. The Husband is at fault in the destruction of the marriage;[10]

h. Husband will be able to deduct alimony payments from his adjusted gross income on his federal income tax return which will significantly reduce his tax liability each year for the amounts paid for the support of the Wife. Wife on the other hand, will be required to report said alimony payments on her tax return and pay tax thereon.[11]

The bulk of the trial court's rulings concerns Wife's earning capacity relative to Husband's. While Husband is currently earning a substantial income, Wife has no income apart from the pensions that she received as part of the parties' marital property dissolution. Even considering the income that Wife receives from the pensions and the decreased expenses as found by the trial court, Wife's need exceeds $2,500.00 per month.

---

[5] *See* Tenn. Code Ann. §36-5-121(i)(2) (concerning the relative education levels of the parties).

[6] *See* Tenn. Code Ann. §36-5-121(i)(3) (concerning the duration of the marriage).

[7] *See* Tenn. Code Ann. §36-5-121(i)(4) (concerning the relative ages and mental conditions of the parties), and (5) (concerning the relative physical conditions of the parties).

[8] *See* Tenn. Code Ann. §36-5-121(i)(8) (concerning the provisions made with regard to the parties' marital property).

[9] *See* Tenn. Code Ann. §36-5-121(i)(10) (concerning the "extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions and tangible and intangible contributions by a party to the education, training or increased earning power of the other party").

[10] *See* Tenn. Code Ann. §36-5-121(i)(11) (concerning the fault of the parties for the demise of the marriage)

[11] *See* Tenn. Code Ann. §36-5-121(i)(12) (concerning the tax consequences to each party)

Further, the trial court found that Wife was unlikely to be able to obtain a job paying even minimum wage, given her age and experience. The evidence does not preponderate against these findings. According to the record, Wife worked no more than ten hours per week during the marriage and none in recent years, often due to frequent moves necessitated by Husband's jobs and Husband's desire that Wife always be available to go on vacation. Certainly, Husband never objected during the marriage to Wife's lack of work outside the home. Wife has no training, education, or experience that would make her employable. Husband does not argue in his brief that Wife could become employable given more training or education. As such, we cannot conclude that the trial court erred in finding that Wife was unlikely to obtain employment at this stage in her life.

In contrast, although Husband expressed his desire to retire shortly after the conclusion of the divorce proceedings due to job stress, nothing in the record suggests that Husband is physically unable to perform his job. There can also be no dispute that Husband's earning capacity far surpasses Wife's. As such, the evidence in the record does not preponderate against the trial court's finding that Wife is a candidate for long-term alimony in futuro at the present time.

Husband finally asserts that the trial court erred in finding that he had the ability to pay alimony in the amount of $2,000.00 per month until Wife's death or remarriage. Husband asserts that the trial court specifically found that Husband had a surplus after reasonable expenses of $1,644.00 per month. In awarding Wife $2,000.00 in alimony per month, however, the trial court found that Husband receives reimbursements from his employment for mileage and per diem for expenses, some of which will not be reduced by Husband's move closer to his place of employment. Further, the trial court found that Husband's tax liability would substantially decrease due to his alimony payments to Wife.

We first note that there was no evidence presented by the parties as to the extent of any decrease in Husband's tax liability due to Husband's alimony obligation. Furthermore, although somewhat unclear, Husband did testify that both the mileage and per diem reimbursements would be eliminated after the divorce. The record contains the following exchange between Husband and his counsel:

> Q. And your testimony is you're not going to be receiving any of [the mileage or per diem] because . . . you'll be a resident now of Alabama?
>
> A. Correct. That's only paid to employees that work more than 60 miles away from their home base.

Elsewhere Husband testified: "Once my residence is changed, permanent residence is changed to Monroeville, I will no longer be eligible for the per diem or the gasoline reimbursement for travel home." As such, the evidence is largely undisputed that both the mileage and per diem would be eliminated from Husband's income. Under these

- 16 -

circumstances, it appears that the trial court abused its discretion in requiring Husband to pay more alimony than he can currently afford. This Court has previously held that a trial court has abused its discretion in ordering a spouse pay more alimony than he or she can currently afford. *See Ezekiel*, 2015 WL 4916930, at \*9. As such, we modify Husband's alimony in futuro obligation to $1,644.00 per month.

## Future Retirement

Husband next asserts that the trial court erred in failing to consider his anticipated retirement. Husband testified throughout the divorce trial that he hoped to retire at age sixty-five, just one year after the divorce. According to Husband, his desire to retire stems from job-related stress and age, though no physical impairments prevent him from continuing his current employment. Husband testified that if he retires at sixty-six, he expects to receive approximately $2,500.00 per month in social security, while Wife will be independently entitled to receive half of that amount.

The trial court declined to consider Husband's anticipated retirement in reaching its decision concerning alimony. As the trial court explained:

> The Court is aware that at such time as Husband does retire, if his retirement is deemed to be reasonable under the law, that his income will be materially [a]ffected and that Wife's income will likewise be effected. The Court is also aware of the rights of each party concerning the social security they would be entitled to. However, the Court is not prepared to consider that at this point since the parties are in a transition period and Wife's expenses may be less at a later time.

"Courts deal with the present. They do not address 'future events that may or may not occur as anticipated or, indeed, may not occur at all.'" *Carter v. Carter*, No. M2014-02457-COA-R3-CV, 2016 WL 697348, at \*3 (Tenn. Ct. App. Feb. 19, 2016) (quoting *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010). Courts "will decline to act 'where there is no need for the court to act or where the refusal to act will not prevent the parties from raising the issue at a more appropriate time.'" *B & B Enterprises*, 318 S.W.3d at 849 (quoting *AmSouth Erectors, LLC v. Skaggs Iron Works, Inc.*, No. W2002-01944-COA-R3-CV, 2003 WL 21878540, at \*6 (Tenn. Ct. App. Aug. 5, 2003)).

Here, the trial court did not abuse its discretion in declining to consider Husband's anticipated retirement because the issue was more appropriately decided in a future modification proceeding if and when Husband determines that retirement is feasible. Here, while Husband may wish to retire at age 65, retirement at that age may not be reasonable given the economic realities of this divorce. Furthermore, while the trial court specifically referenced that Wife's expenses may decrease as a result of selling the marital home, the

record also reflects that Husband's expenses are likely to substantially decrease in the near future: Husband's current expenses include substantial debt payment, one of which, a $2,000.00 per month debt payment, that will likely be paid off in approximately seven months at the current rate. Questions involving "reaching far into the future" are best "left to future judicial determination rather than crystal-ball gazing." ***Sprenger v. Superior Court In & For Sacramento Cnty.***, 268 Cal. App. 2d 857, 867, 74 Cal. Rptr. 638, 643 (1969). Given the myriad scenarios that might arise between the divorce trial and Husband's anticipated retirement, the trial court did not abuse its discretion in relying only on the present circumstances of the parties in reaching its decisions.

## Attorney's Fees

Finally, Husband seeks an award of attorney's fees on appeal. An award of appellate attorney's fees is a matter within this Court's sound discretion. ***In re Jaiden W.***, No. M2014-00953-COA-R3-JV, 2015 WL 1881092, at *4 (Tenn. Ct. App. Apr. 23, 2015) (citing ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995) (involving both child support and alimony)). In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005).

Here, Husband has prevailed in reducing his alimony obligation, but has not been successful on the other issues in this appeal. Importantly, Husband relies on his calculation of the present value of the pensions awarded to Wife to assert that attorney's fees are appropriate because he was awarded a mere 30% of the marital property. We have concluded, however, that Husband chose not to present evidence on the value of the subject pensions and that there can be no appellate relief from that decision. As such, the dissolution of marital property was much more equitable than Husband's characterization. Furthermore, the trial court found that Wife had a need of over $2,500.00 per month. Wife will only be entitled, however, to receive $1,644.00 per month in alimony. As such, Wife simply does not have the ability to pay Husband's requested attorney's fees. We, therefore, respectfully deny Husband's request for an award of attorney's fees incurred in this appeal.

## Conclusion

The judgment of the trial court is affirmed in part and modified in part. Specifically, Husband's alimony in futuro obligation is modified to award Wife alimony in futuro pursuant to Tennessee Code Annotated Section 36-5-121(f) in the amount of $1,644.00 per month. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant William Lee Naylor, and his surety.

_____
J. STEVEN STAFFORD, JUDGE